

**ORDERED in the Southern District of Florida on July 22, 2011.**

_____
**A. Jay Cristol, Judge
United States Bankruptcy Court**

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Case No. 10-20733-BKC-AJC |
| HARBOUR EAST DEVELOPMENT, LTD., | Chapter 11 |
|     Debtor. | |
| _____/ | |
| HARBOUR EAST DEVELOPMENT, LTD., | |
|     Plaintiff, | Adv. No. 10-03584-BKC-AJC-A |
| v. | |
| 7935 NBV, LLC and WHIRLPOOL CORPORATION, | |
|     Defendants. | |
| _____/ | |

**ORDER (A) GRANTING DEFENDANT 7935 NBV, LLC'S
MOTION FOR SUMMARY JUDGMENT ON COUNT II AND (B) DENYING
DEBTOR'S CROSS-MOTION FOR SUMMARY JUDGMENT ON COMPLAINT TO
<u>AVOID NBV'S SECURITY INTERESTS</u>**

THIS MATTER came before the Court for hearing on March 31, 2011 at 11:00 a.m. upon

*Defendant 7935 NBV, LLC's Motion For Summary Judgment on Count II* [ECF No. 26] (the

1

"Motion") and Harbour East Development, Ltd.'s Response and Cross-Motion for Summary Judgment on Complaint to Avoid NBV's Security Interests [ECF Nos. 36 and 37] (the "Cross-Motion").  The Court, having reviewed the record in this adversary proceeding, the Motion, the Cross-Motion, the various papers filed by the parties, and having heard the arguments of counsel, does GRANT the Motion and DENY the Cross-Motion for the reasons set forth herein.

## I.   FACTUAL BACKGROUND

Harbour East Development, Ltd. ("Harbour East") or the "Debtor") is the developer and owner of the luxury residential condominium development known as Cielo on the Bay ("Cielo" or the "Property") located at 7935 East Drive, North Bay Village. Cielo contains 35 residential condominium units (the "Condominium Units").

In 2005, pursuant to its condominium prospectus, the Debtor began to market and enter into preconstruction purchase agreements with third-party purchasers relating to the Condominium Units to be constructed in the future. Pursuant to the terms of each preconstruction purchase agreement, the Debtor, as seller, agreed to construct and convey title to an individual Condominium Unit in the Project upon completion, and the purchaser agreed to tender the balance of the purchase price at closing. Upon execution of the preconstruction purchase agreement, the purchaser agreed to deposit earnest money with an escrow agent pursuant to the terms of an escrow agreement.  If the purchaser later defaulted, the Debtor could seek a forfeiture of the purchaser's earnest money as a remedy for the breach.  If the Debtor defaulted, the purchaser could seek the return of its earnest money and cancellation of the purchase agreement.

On April 22, 2005, Blass and Frankel, P.A. (the "Escrow Agent"), entered into an Escrow Agreement with the Debtor, pursuant to which the Escrow Agent would receive and maintain

deposits made by purchasers under the preconstruction purchase agreements relating to the Condominium Units. The Escrow Agent established a deposit account (the "Escrow Account") with NBV's predecessor in interest, Northern Trust Bank of Florida, N.A. ("Northern Trust"), into which it deposited and maintained the earnest money deposits of purchasers under the preconstruction purchase agreements.

During 2005, the Debtor entered into preconstruction purchase contracts ("Purchase Contracts") with various purchasers who each delivered checks in an amount equal to 20% of his/her respective purchase price (collectively, the "Deposits") to the Escrow Agent which were deposited into the Escrow Account. Between the period of May 17, 2005 and November 25, 2005, the Escrow Agent received $3,020,110 in Escrow Deposits, which the Escrow Agent deposited in the Escrow Account.

On December 28, 2005, Harbour East and Northern Trust entered into a Construction Loan Agreement pursuant to which Harbour East borrowed $16,900,000 from Northern Trust (the "Loan") (Complaint [ECF No. 1] (the "Complaint") at ¶ 13). The loan documents were substantially comprised of, *inter alia*, (i) a promissory note in the principal amount of $16,900,000, (ii) a mortgage on the real property (the "Mortgage"), (iii) a construction loan agreement, in which Northern Trust agreed to make the loan to the Debtor to construct Cielo, and (iv) a personal guaranty signed by Mario Egozi ("Egozi") (collectively, the "Loan Documents").

The Mortgage encumbers the Property, together with, among other things, all buildings, leases, rents, easements, rights, deposits, proceeds, awards, income, revenues, improvements, equipment, and fixtures thereon. On or about February 14, 2006, Northern Trust perfected its security interest on the real property by recording the Mortgage with the clerk of court for Miami-Dade County at OR Book 24237, Page 3301-3323, as CFN 2006R0162511.

On or about December 21, 2009, Northern Trust sold the loan to 7935 NBV, LLC ("NBV") as the designee of TMS FL 2, Inc., pursuant to that certain Loan Sale Agreement, dated as of December 21, 2009 (the "Loan Sale Agreement").

On April 22, 2010 ("Petition Date"), the Debtor filed its voluntary petition commencing its bankruptcy case.

On August 3, 2010, the Bankruptcy Court entered an order determining that $550,855 of the balance of the Deposits in the Escrow Account had been forfeited by the applicable purchasers and ordered that such deposits be turned over to the Debtor, subject to a later determination of the validity of any interests in the Deposits [ECF No. 153].

On October 1, 2010, this Court entered an order approving a compromise of a dispute between the Debtor and a purchaser, and directed the Escrow Agent to pay to the Debtor $40,750 of such purchaser's Escrow Deposit, pursuant to the terms of a settlement agreement. On or about October 4, 2010, the Debtor collected $40,750 under the settled Purchase Contract and deposited this amount into a segregated deposit account.

## II.    STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, as incorporated by Federal Rule of Bankruptcy Procedure 7056, summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Supreme Court has reaffirmed the vitality of summary judgment as a method for the just, speedy and inexpensive disposition of cases. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). Here, the parties each

contend that the material facts are not in dispute and that summary judgment is appropriate.

### III.    DISCUSSION AND ANALYSIS

It is undisputed that neither Northern Trust nor NBV filed Form UCC-1 Financing Statements with the Florida Secretary of State listing the Deposits as collateral, nor were either of them a party to a control agreement relating to the Deposits or the Escrow Account. The significance of this fact is the heart of the dispute at issue in this adversary proceeding.

The threshold legal question for the Court's consideration is whether earnest money deposits paid by prospective purchasers of Condominium Units pursuant to the Purchase Contracts are (a) proceeds of the Condominium Units themselves, taking them outside the scope of the Uniform Commercial Code and making them proceeds of the real estate and subject to NBV's Mortgage, or instead (b) non-real estate collateral subject to the Uniform Commercial Code?

The Debtor does not challenge the security interest granted to Northern Trust and assigned to NBV pursuant to the terms of the Loan Documents. Rather, the Debtor contends that, by failing to file a Form UCC-1 Financing Statement or enter into a control agreement, NBV did not perfect its lien and security interest in the Deposits and therefore, as a hypothetical judgment lien creditor, the Debtor may avoid NBV's liens thereon pursuant to 11 U.S.C. § 544(a). NBV, on the other hand, suggests that the Deposits made in connection with a contract for the purchase of real estate constitute proceeds of the underlying real property and are subject to the duly-recorded Mortgage and, as an interest in real estate, such Deposits fall outside the scope of the Uniform Commercial Code. NBV also posits that were the Uniform Commercial Code applicable, it nevertheless perfected its security interest in the Deposits through constructive possession pursuant to Fla. Stat. § 679.3131.

5

## NBV's Security Interest in the Deposits Is Governed by Real Property Law, Not the UCC

The Debtor's main argument hinges upon the applicability of the Florida Revised UCC to security interests in the Deposits. As set forth below, the Eleventh Circuit has said otherwise.

In *Church v. Colling (In re Aldersgate Foundation, Inc.)*, 878 F.2d 1326 (11th Cir. 1989), as here, the Eleventh Circuit was asked to consider whether forfeited earnest money deposits were subject to the mortgage lien of a secured creditor or were unencumbered assets of a bankruptcy estate. Although the Uniform Commercial Code was not applicable to the real estate actions before the Eleventh Circuit, the Eleventh Circuit was guided by the definition of "proceeds" under the Former Florida UCC[1], as well as the result dictated by Florida law in a foreclosure sale in a non-bankruptcy context.

According to the reasoning of *Aldersgate*, a potential buyer, in depositing earnest money, "in essence, obtain[s] the right to purchase the land." *Id*. at 1329. Further, the payment of the deposit presumably prevents another party from purchasing the property and therefore "[a] valuable right to the property [is] conveyed. Selling that right to purchase the property at a given price was a disposition of the collateral, and the forfeited deposits thus fall within the statutory definition of proceeds." *Id.*

Accordingly, deposits, including forfeited deposits, made in connection with a contract for the purchase of real estate constitute proceeds of the underlying real property and are therefore encumbered by the mortgage thereon. *Id.* Because a lien in real estate is perfected through the recordation of a mortgage in the county in which the underlying real property is located pursuant to Fla. Stat. § 695.01, any deposit produced and derived from a contract to sell an interest in the real estate is subject to the lien of a secured creditor with a valid lien on the

---

[1] The definition of "proceeds" under the Former Florida UCC is "whatever is received upon the sale, exchange, collection, or other disposition of collateral or proceeds." Fla. Stat. § 679.306 (1999).

6

underlying real estate.  *See In re Vandevender*, 87 B.R. 59, 61 (Bankr. S.D. Ill. 1988).

The *Aldersgate* Court also looked at analogous situations arising under Florida law, which point to the same result.  In a foreclosure sale, any deposit made by a purchaser is retained by the judgment creditor for application to the debt if the purchaser defaults and, if the purchaser closes, the deposit naturally becomes part of the purchase price.

The case at bar does not dictate a different result.  NBV's mortgage lien clearly grants NBV a security interest in the sale proceeds paid by a unit purchaser upon the sale of a condominium unit.  Pursuant to *Aldersgate*, the earnest money deposits received by the Debtor are "proceeds" subject to NBV's mortgage lien, whether the deposits are forfeited due to a purchaser default or become part of the purchase prices at closing.

The Eleventh Circuit was not alone in reaching this conclusion, but rather was persuaded by other courts that had also held that forfeited deposits were nevertheless sale proceeds. *Aldersgate*, 878 F.2d at 1328 citing *Bank of Silvis v. Boultinghouse Auction Co*., 389 N.E.2d 267 (Ill. App. 1979) (forfeited purchase deposit was "proceeds" of sale of real estate"); *In re Vandevender*, 87 B.R. at 60-61 (forfeited purchase deposit is proceeds of sale of real property subject of mortgage lien, not unencumbered asset of estate).

Similarly, several courts have analyzed or discussed *Aldersgate* and they too have reached the same result.  *Old Stone Bank v. Tycon I Bldg. Ltd. Partnership*, 946 F.2d 271 (4th Cir. 1991); *Summit Nat'l Bank. v. Spicer*, 2002 WL 737145 (N.D. Tex. Apr. 23, 2002); *In re Clancy & Co. Const., Inc.*, 214 B.R. 387 (Bankr. D.Colo. 1997); *Mueller v. Kamenesh*, 864 So.2d 38, 40 (Fla. 3d DCA 2003) (Florida appellate court relying on *Aldersgate* determined that forfeited earnest money deposit is proceeds of real estate, not personal property).

*Old Stone Bank* is particularly instructive.  In *Old Stone Bank*, the Fourth Circuit

expressly relied on and extensively discussed *Aldersgate* and *Vandevender* in holding that a broadly worded deed of trust covering real estate granted the secured creditor a security interest in the revenue derived from the use of the property; an earnest money deposit was paid in exchange for valuable rights in the property and was proceeds (even if labeled as liquidated damages); and the deposit was therefore proceeds of the real estate subject of the lien created by the deed of trust. *Old Stone Bank v. Tycon I Bldg. Ltd. Partnership*, 946 F.2d at 272-77.

In addition to a similar discussion of the meaning of "proceeds" as was undertaken by the Eleventh Circuit in *Aldersgate*, the *Old Stone Bank* court noted that the execution of a real estate contract and receipt of an earnest money deposit is a disposition of collateral that generates actual proceeds in exchange for valuable rights in the real estate. These rights include nearly all of the incidents of ownership, including the benefit of any appreciation in value and the right to resell the right to purchase to another.

The *Old Stone Bank* court noted a second important basis for determining that a mortgagee has a senior right to purchase deposits under a real estate contract – to "compensate for a decrease in the worth of real estate that may occur while it is under a contract of sale." *Id.* at 275. This is particularly relevant in the instant case since the value of the Debtor's property has deteriorated since 2005 along with the value of all other real estate in South Florida.

**<u>Notwithstanding Revisions to Florida's UCC, *Aldersgate* Still Controls</u>**

The Debtor collaterally attacks *Aldersgate*, its progeny, and the numerous cases upon which it relied by contending that the Revised Florida UCC abrogates the holdings in these decisions. This is not the case because the Revised Florida UCC does not apply to "the creation or transfer of an interest in or lien on real property, including a lease or rents thereunder". Fla. Stat. § 679.1091(4)(k).

As indicated above, the Eleventh Circuit, the Fourth Circuit, and, albeit in a differing context, Florida's Third District Court of Appeal, among other courts, all hold that a forfeited earnest money deposit constitutes proceeds of a transfer of interest in real property. *Aldersgate*, 878 F.2d at 1328; *Old Stone Bank*, 946 F.2d at 274-275; *Mueller*, 864 So.2d at 40. Accordingly, the Revised Florida UCC does not change the conclusion reached in *Aldersgate*.

The other caselaw relied upon by the Debtor for the applicability of the Revised Florida UCC is also unavailing. *Matter of Equitable Development Corp.* involves a state court judgment issued in 1971 arising from a guarantee that was secured by an assignment of contracts and accounts receivable. The assignment at issue expressly provided that the assignment "shall be governed by the Uniform Commercial Code of the State of Florida". *Equitable Development Corp.*, 617 F.2d 1152 at 1154 & 1155. Not surprisingly, the *Equitable* court relied on this language to determine that the parties intended to create a security interest in contract rights, contracts, and contract proceeds that would be governed by the Florida UCC. *Id.* at 1156 The case at bar does not involve an assignment of contracts or of accounts receivable, but rather involves forfeited purchase deposits, which are proceeds of real property pursuant to governing law.

*In re Gemini at Dadeland*, *Ltd.* is also unhelpful to Debtor's cause. In *Gemini*, Judge Britton held that a security interest in purchase accounts and proceeds thereof was not the "creation or transfer of an interest in or lien on real estate" excluded from the Florida UCC by then-applicable Fla. Stat. § 679.104(10). The opinion does not describe the lender's arguments to the contrary, if any, involved only $21,297, and ultimately entered judgment in favor of the bank by virtue of constructive possession (as NBV argues would apply in this case were the UCC applicable at all).

The Debtor relies heavily on the two-page *Gemini* opinion throughout its brief for the one page that it likes, but then claims that *Gemini* "do[es] not withstand close analysis" with respect to the page that supports NBV's constructive possession argument.[2]  Moreover, to the extent *Gemini* held that a security interest in forfeited real estate deposits is governed by the UCC, it is clearly trumped by the Eleventh Circuit's holding in *Aldersgate* approximately 7 years later.[3]

**Even if the Revised Florida UCC Were Controlling, NBV Is Nevertheless Perfected**

Even if the Revised Florida UCC does apply, NBV prevails.  The definition of "proceeds" under the former Florida UCC is, in relevant part, "whatever is received upon the sale, exchange, collection, or other disposition of collateral or proceeds".  Fla. Stat. § 679.306(1) (1999).  In the Revised Florida UCC, the relevant portion of the definition of "proceeds" has been expanded to "[w]hatever is acquired upon the sale, lease, license, exchange, or other disposition of collateral; [w]hatever is collected on, or distributed on account of, collateral; [and] [r]ights arising out of collateral."  The Revised Florida UCC broadens the definition of proceeds, making it highly unlikely that the *Aldersgate* Court would have reached a different result under a broader definition than it did under the narrower former Florida UCC.

The Debtor also suggests that the definition of "accounts" under the Revised Florida UCC includes payments with respect to the sale of interests in real property and therefore the Deposits.  This too misses the point.  The Debtor correctly states that the definition of "account" under the Revised Florida UCC is "a right to payment of a monetary obligation, whether or not earned by performance, for property that has been or is to be sold …."  However, at the time the definition of "account" was changed, Fla. Stat. § 679.1091(4)(k) was not changed to broaden the scope of the Revised Florida UCC to include the creation or transfer of an interest in or lien on

---

[2]    Debtor's Response and Cross Motion at p. 23.
[3]    As are the other out-of-state pre-1989 cases cited by the Debtor.

real property (or a lease or rents thereunder). Accordingly, the new definition of "account" cannot swallow the specific provision mandating that the UCC does not govern interests in real property.

Finally, Debtor's reliance on *In re Nittolo Land Dev. Ass'n, Inc.*, 333 B.R. 237 (Bankr. S.D.N.Y. 2005) is misplaced. In *Nittolo*, the secured creditor of a corporate debtor was asserting a lien upon the proceeds of a property that was not owned by that debtor, but rather was owned by the shareholders of that debtor and was sold by a chapter 7 trustee in the shareholders' separate chapter 7 proceeding. The secured creditor agreed that it had no lien in the real property prior to the sale, but rather argued that the sale created an account to which its lien attached. *Nittolo* does not address *Aldersgate*, nor was there any party who had reason to argue that the holder of a pre-existing mortgage had the first-priority security interest in the proceeds.

Neither NBV nor the Debtor have located a single case in the Eleventh Circuit or elsewhere that rejects or criticizes *Aldersgate,* nor any court that has held *Aldersgate* to have been abrogated by the Revised Florida UCC. Since the enactment of Revised Article 9, courts continue to rely on *Aldersgate*, *Vandervender*, and *Old Stone Bank* for the proposition that a mortgage or deed of trust attaches to proceeds from the disposition of the real property and that forfeited deposits constitute such proceeds. *In re: D&M Land Co., LLC*, 2010 WL 358525 (Bankr. E.D.N.C. Jan. 15, 2010); *In re D&M Land Co., LLC*, 2010 WL 358525 (Bankr. E.D.N.C. Jan. 15, 2010) *aff'd sub nom D &M Land Co., LLC v. Branch Banking & Trust Co.*, 431 B.R. 133 (E.D.N.C. 2010); *In re Allied Properties, LLC*, 2007 WL 1849017 at *8 (Bankr. S.D. Tex. 2007).

*Aldersgate* remains the governing law, and indicates that forfeited deposits are proceeds of real estate subject to the security interest of the mortgagee.

### Even if the Florida Revised UCC Applies, NBV Perfected Its Interest in the Deposits by Possession

Finally, if the Florida Revised UCC were somehow deemed applicable notwithstanding *Aldersgate*, NBV's security interest in the Deposits was properly perfected by "possession" pursuant to Fla. Stat. § 679.3131 when the Escrow Agent acknowledged, in an authenticated record, that it was maintaining possession of the Deposits for the benefit of NBV.

In the Motion, NBV describes and attaches three signed writings in which the Escrow Agent acknowledges that it is obligated to obtain NBV's approval in order to disburse the Deposits and that NBV is entitled to the Debtor's portion of a post-closing property tax refund in respect of a previously sold Condominium Unit. Motion at ¶¶ 6-10. Similarly, Escrow Agent acknowledged the nature of these writings in deposition testimony referenced in the Motion. *Id*. at ¶¶ 10.

Nothing in the Debtor's papers suggests that the Debtor disputes any of the factual allegations set forth in NBV's Motion as to how possession was accomplished, but rather argues that possession is not a means to obtain perfection in the Deposits because the Deposits are an "account". This, of course, puts the Debtor in the awkward position of arguing that *Gemini*, the two-page opinion on which it otherwise heavily relies, "does not withstand close analysis". Cross-Motion at p. 23.

Indeed, as the Debtor acknowledges, *Gemini*, 24 B.R. 57, *In re LDM Dev. Corp.,* 211 B.R. 348, 353 (Bankr. D. Minn. 1997) and *In re O.P.M. Leasing Servs*., 46 B.R. 661, 670 n.5 (Bankr. S.D.N.Y. 1985) each hold, notwithstanding the definition of "money" in the Florida Revised UCC, that money, when deposited into a bank account, is still money and therefore perfection can be achieved through possession.

The Debtor refers the Court to *Citizen's Bank of Maryland v. Strumpf*, 516 U.S. 16 (1995) and contends that the Supreme Court has held otherwise. *Strumpf*, however, is not a UCC case and does not rely upon the UCC nor upon any banking law, but rather addresses whether a bank's "administrative hold" on a depositor's account constitutes a setoff in violation of the automatic stay. In that context, the Court concluded that no stay violation had occurred by freezing the account, because the bank did not actually reduce the balance and there was no intent to permanently settle the account.

The Escrow Agent was in "possession" of the Deposits on the Petition Date and at all other relevant times because the Deposits were held in the Escrow Account which was in the name of the Escrow Agent. *See Arnold, Matheny & Eagan, P.A. v. First Am. Holdings, Inc.*, 982 So.2d 628 (Fla. 2008) (holding that in the case of funds in a bank account, a party has possession and control of the funds once the funds are in that party's account); *see also Nicholas v. Ross*, 721 So.2d 1241 (Fla. 4th DCA 1998) (appellant obtained possession of funds once the funds were deposited into her account). As the person in "possession," the acknowledgements by the Escrow Agent set forth in NBV's Motion that it held and continues to hold the Deposits for the benefit of NBV serve to perfect NBV's security interest in the Deposits under Fla. Stat. § 679.3131(3).

### IV. **CONCLUSION**

This Court concludes that, notwithstanding enactment of the Revised Florida UCC, *Aldersgate* has not been abrogated and remains the controlling law of the Eleventh Circuit. Accordingly and for the reasons set forth above, the Deposits are proceeds of Condominium Units subject to the Mortgage held by NBV. NBV is therefore entitled to summary judgment in respect of Count II of the Complaint. Moreover, even if *Aldesrgate* is not controlling and the

Revised Florida UCC were to govern perfection of a security interest in the Deposits, NBV is properly perfected by constructive possession pursuant to Fla. Stat. § 679.3131(3) because the Escrow Agent executed authenticated writings acknowledging NBV's interest in the Deposits. NBV is also entitled to summary judgment on this basis. Accordingly, it is

ORDERED AND ADJUDGED that:

1. The Motion is GRANTED.

2. The Cross-Motion is DENIED.

3. Summary Judgment shall be entered in favor of Defendant 7935 NBV, LLC in respect of Count II of the Complaint.

# # #

Copy to:
Mindy A. Mora, Esq.
Bilzin Sumberg Baena Price & Axelrod LLP
1450 Brickell Avenue, Suite 2300
Miami, Florida  33131

Attorney Mora shall serve a copy of this order on interested parties and file a certificate of service.