

ORDERED in the Southern District of Florida on January 31, 2012.

A. Jay Cristol, Judge
United States Bankruptcy Court

---

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Case No. 10-20733-BKC-AJC |
| HARBOUR EAST DEVELOPMENT, LTD., | Chapter 11 |
| Debtor. _____/ | |
| HARBOUR EAST DEVELOPMENT, LTD., Plaintiff, v. | Adv. No. 10-03584-AJC-A |
| 7935 NBV, LLC and WHIRLPOOL CORPORATION, Defendants. _____/ | |

**ORDER AND MEMORANDUM OPINION DENYING DEBTOR'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

This matter came before the Court for hearing on September 28, 2011 at 11:00

a.m. upon *Debtor's Motion for Partial Summary Judgment on Count I of Complaint to*

*Avoid NBV's Security Interests* [ECF No. 51] (the "Motion") and 7935 NBV, LLC's *Response to Debtor's Motion for Partial Summary Judgment* (the "Response") [ECF No. 56].

## BACKGROUND

Plaintiff Harbour East Development, Ltd. ("Harbour East" or the "Debtor") is a real estate developer that developed and built a 35-unit luxury residential condominium development known as Cielo on the Bay ("Cielo" or the "Property") located at 7935 East Drive in North Bay Village, Florida. The Debtor has sold 4 of the residential condominium units in Cielo and currently owns the remaining 31 residential condominium units (the "Unsold Condominium Units").

On or about December 28, 2005, the Debtor executed a construction loan agreement with Northern Trust Bank ("Northern Trust"), whereby Northern Trust made a construction loan (the "Loan") to the Debtor in the aggregate principal amount of $16.9 million (the "Loan Agreement"). The Loan was evidenced by a promissory note (the "Note") executed by the Debtor in favor of Northern Trust in the principal amount of $16.9 million, which in turn was secured by a first priority mortgage, assignment of rents, security agreement, financing statement, and fixture filing executed by the Debtor in favor of Northern Trust that encumbers the Property, fixtures affixed to the Property and rents derived from the Property (the "Mortgage").

On or about February 14, 2006, Northern Trust perfected its security interest in the real property and in "fixtures" by recording the Mortgage with the clerk of court for Miami-Dade County at OR Book 24237, Page 3301-3323, as CFN 2006R0162511. The Mortgage also states that "[p]ortions of the Mortgaged Property are or may become

2

fixtures or real property. This Mortgage shall also constitute a "fixture filing" for purposes of the applicable Uniform Commercial Code."

As set forth in the section of the Mortgage designated as the "Granting Clause" (the "<u>Granting Clause</u>"), Harbour East, as mortgagor granted Northern Trust, as mortgagee, a security interest in a list of property owned by Harbour East (the "<u>Mortgaged Property</u>"). Importantly, subsection (f) of the Granting Clause is entitled "Personal Property" and granted a security interest to Northern Trust in all tangible equipment, fixtures and personalty (the "<u>Goods</u>").

Specifically, subsection (f) of the Granting Clause reads as follows:

To the extent owned by Mortgagor, all fixtures, fittings, appliances, apparatus, equipment, machinery, furnishings and any other tangible or intangible personal property, now or hereafter attached or affixed to, placed upon or used in any way in connection with the use, enjoyment, operation or occupancy of the Premises, including all heating, air conditioning, incinerating, refrigerating, monitoring, water, cleaning and communications apparatus and equipment whatsoever, all computers, computer software, televisions, systems, photocopiers, telecopiers, medical equipment, fire sprinkler and alarm systems, all boilers, engines, motors, dynamos, generating equipment, piping and plumbing fixtures, ranges, cooking utensils and apparatus and mechanical kitchen equipment, refrigerators, cooling, ventilating, sprinkling and vacuum cleaning systems, fire extinguishing and prevention apparatus, gas and electrical fixtures, elevators, escalators, partitions, built-in mirrors, planters, shelves, spotlighting equipment, lockers, cabinets, window covering and all hardware therefor, carpeting and other floor covering, vacuum cleaning systems, floor cleaning, waxing and polishing equipment, lighting fixtures, lamps, bulbs, electrical and other signs, office furniture, window shades, blinds, screens, storm sash, awnings, furnishings and artwork in public spaces, halls and lobbies, and shrubbery and plants (and including, all interest of Mortgagor in any of such items, at any time acquired under any security agreement, conditional sale contract, chattel mortgage or other security instrument), wherever located (collectively, the "<u>Personal Property</u>").

On or about December 21, 2009, Northern Trust, as Seller, and TMS FL 2, Inc., as Purchaser ("TMS"), entered into a Loan Sale Agreement, pursuant to which Northern Trust sold the Loan to 7935 NBV LLC ("NBV") as assignee of TMS.

On September 10, 2010, the Debtor initiated the present adversary proceeding by filing its complaint (the "Complaint") against NBV and Whirlpool Corporation seeking a determination as to the validity, priority and extent of lien or other interest in property. [ECF No. 1].  Although the Complaint seeks a determination as to the extent of NBV's lien on personal property, it does not make any allegations regarding the language in the Mortgage or the intent of such language.  Further, the Complaint does not seek declaratory relief as to any specific property or its character as a fixture or otherwise.

On August 14, 2011, the Debtor filed the Motion, by which it seeks to avoid NBV's lien specifically as to the Goods.  The Debtor argues that NBV was required under Article 9 of the Uniform Commercial Code as enacted in Florida (the "UCC") to file a UCC-1 Financing Statement in order to perfect its security interest in the Goods, and that because NBV failed to do so, the Debtor's estate may avoid NBV's security interest with respect to the Goods pursuant to section 544(a) of the Bankruptcy Code.

## LEGAL STANDARD

The party moving for summary judgment bears the initial burden of demonstrating to the Court "by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). A court "must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Hinson v. Clitch County Bd. of Educ.*, 231 F.3d 821, 826-827 (11th Cir. 2000).

4

As summary judgment is a drastic remedy, it should not be granted unless movant establishes that the other party is not entitled to recover under any discernable circumstances. *Mercantile Bank & Trust Co*, 750 F.2d 838, 842 (11th Circ. 1985); *Walker v. CIT Fin. Servs. Corp. (In re Lease Purchase Corp.)*, 1992 WL 12004358, *2 (Bankr. S.D. Ga. 1992). In determining whether a genuine dispute of material fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Bruno v. Mona Lisa at Celebration, LLC (In re Mona Lisa at Celebration LLC)*, 436 B.R. 179, 188 (Bankr. M.D. Fla. 2010).

## DISCUSSION AND ANALYSIS

The Bankruptcy Code permits debtors-in-possession and trustees to avoid unperfected liens pursuant to the "strong-arm powers" of section 544(a) and to preserve those liens for the benefit of the estate. *In re Maison Grande Condo. Ass'n, Inc.*, 425 B.R. 684, 698 (Bankr. S.D. Fla. 2010); *In re Trafford Distrib. Ctr., Inc.*, 414 B.R. 849 (Bankr. S.D. Fla. 2010).

As alleged by the Debtor in the Complaint and acknowledged by NBV in the Response, there is no dispute that both NBV and Northern Trust failed to file a UCC-1 Financing Statement with the Florida Secured Transaction Registry describing the Goods.

A. Security Interests in Certain Goods Can Be Perfected Without Filing a UCC-1 Financing Statement with the Florida Secured Transaction Registry

As a result of NBV's failure to file a UCC-1 Financing Statement describing the Goods as collateral, Harbour East is entitled to avoid NBV's liens and security interests pursuant to section 544(a) of the Bankruptcy Code with respect to any of Harbour East's

5

property in which a lien or security interest can *only* be perfected by filing a UCC-1 Financing Statement with the Florida Secured Transaction Registry. To the extent that there is no genuine issue of material fact as to whether particular property constitutes goods for which a UCC-1 Financing Statement must have been filed, Harbour East would be entitled to summary judgment as to that specific property. However, based upon the record before the Court, there appears to be an issue of fact as to whether these items of property constitutes goods for which a centrally-filed UCC-1 Financing Statement must have been filed prior to the commencement of the Debtor's bankruptcy case.

Although an interest in goods generally can only be perfected by filing a UCC-1 Financing Statement or by possession, this rule has exceptions. NBV correctly identifies three situations where a security interest in goods is perfected absent the filing of a UCC-1 Financing Statement.

First, goods acquired with the proceeds of NBV's collateral (including rents collected by the Debtor) on which NBV has a perfected lien pursuant to the Mortgage remain subject to NBV's lien for 20 days pursuant to Fla. Stat. § 679.3151(4) (security interest remains perfected in proceeds until 21st day). Accordingly, to the extent the 20-day period had not lapsed prior to Harbour East's bankruptcy filing, NBV's liens on the Goods acquired within the 20 days prior to the Petition Date would have been valid on the petition date and therefore not avoidable pursuant to section 544(a).

Second, pursuant to section 552 of the Bankruptcy Code, NBV's lien and security interest extends to post-petition proceeds of NBV's pre-petition collateral, including rents. In addition, pursuant to the consensual cash collateral orders entered in Harbour

6

East's bankruptcy case,[1] NBV has been granted a replacement lien on all of Harbour East's property with the same validity, priority, and extent as NBV's pre-petition lien, as well as a first-priority lien on any property acquired post-petition by the Debtor using NBV's cash collateral.  Accordingly, NBV's security interests in Goods acquired post-petition may not be avoided pursuant to section 544(a), notwithstanding the absence of a UCC-1 Financing Statement filed with the Florida Secured Transaction Registry.

The third category of goods that remain subject to NBV's lien without a centrally-filed UCC-1 Financing Statement are goods that became "fixtures" under the UCC.  A security interest in goods that become fixtures is perfected by filing a fixture filing.  As set forth above, the Mortgage also served as a fixture filing and was properly recorded, thereby perfecting NBV's security interests in the Goods that became fixtures under Florida law.  *See* Fla. Stat. § 679.334 (1999).

Goods that are "fixtures" do not lose their character as personal property, but simply are "goods" that have "become so related to particular real property that an interest in them arises under real property law." Fla. Stat. § 679.1021(oo).  Under Florida law, a properly recorded mortgage has priority over all subsequent security interests in fixtures to the real property regardless of perfection. *See* Fla. Stat. § 679.334(3) (1999) ("[a] security interest in goods which are or become fixtures is invalid against any person with an interest in the real property at the time the security interest in the goods is perfected or at the time the goods are affixed to the real property, whichever occurs later, unless such person has consented to the security interest or disclaimed an interest in the goods as fixtures.").

There is no dispute that NBV is the holder of a first-priority mortgage lien

---

[1] Main case ECF Nos. 73, 117, 141, 244, 316, 387, 403, 461.

7

encumbering the Property pursuant to the Mortgage. Nor is there any dispute that pursuant to the Granting Clause, the Mortgage constitutes a fixture filing for purposes of the Uniform Commercial Code. Accordingly, NBV's recordation of the Mortgage was sufficient to protect its lien on all Goods which became fixtures upon affixation to the Property against all third parties, including the debtor-in-possession, pursuant to section 544(a) of the Bankruptcy Code.

B.   The Debtor Has Not Demonstrated It Is Entitled to Summary Judgment

In light of the foregoing analysis, in order to grant partial summary judgment to the Debtor, Harbour East must have presented summary judgment evidence demonstrating that (a) the Goods defined as Personal Property under subsection (f) of the Granting Clause were not acquired either (i) with proceeds of NBV's collateral in the 20 days prior to the filing of the Debtor's bankruptcy case; or (ii) post-petition by the Debtor using NBV's cash collateral; and (b) no genuine issue of material fact exists as to whether the Goods (or any portion thereof) became fixtures pursuant to the UCC. *See Clark v. Coats & Clark, Inc.*, 929 F.2d at 608 (party moving for summary judgment bears the initial burden of demonstrating to the Court" by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial").

Harbour East, however, has neither alleged in the Complaint nor proven through the Motion when the Goods were acquired or that the Goods were acquired from funds not subject of NBV's liens. Indeed, the Debtor's silence and complete failure to produce any evidence on these issues alone prevents the Court from granting the relief sought by the Motion.

The Court is also unable to conclude that the Goods set forth in subsection (f) of the Granting Clause are generally not fixtures. The Court observes that, although a few

8

of the items listed in subsection (f) typically would not constitute fixtures, most of the items listed appear to be goods that commonly do become fixtures.

The Debtor argues that "[t]he Mortgage and Security Agreement reflect the Debtor and Northern Trust's intent that the property defined as "Personal Property" would retain its character as personal property and would be treated as personal property for purposes of enforcement and perfection of the security interests granted therein pursuant to the Uniform Commercial Code." Motion at 5.  The Debtor suggests that the definition of "Personal Property" in subsection (f) of the Granting Clause of the Mortgage reflects the parties' intention that the Goods would not be treated as "fixtures" under the UCC.

The Debtor's argument, however, is misplaced.  All goods, including goods that become fixtures, are personal property. The distinction between goods generally and goods that become fixtures is not whether they are personal property, but rather how a security interest in such personal property is perfected.  When goods become fixtures, perfection is accomplished through the filing of a fixture filing in the office of the clerk of the circuit court in which the real property is situated rather than by filing a UCC-1 Financing Statement with the Florida Secured Transactions Registry.

Moreover, examination of the Granting Clause as a whole undermines the Debtor's position.  Under the Granting Clause, Harbour East grants the lender, as mortgagee, a lien on the Mortgaged Property to secure the full and complete payment of the Construction Loan. The Mortgaged Property is grouped together in classifications that, while descriptive, are not correlated with the property classifications created under the Uniform Commercial Code.  For example, subsection (g) of the Granting Clause

9

grants Mortgagee a security interest in "Insurance Proceeds."  If the parties had intended to follow the classification scheme under the Uniform Commercial Code, Insurance Proceeds would have been characterized merely as "Proceeds" or "Accounts". *See* Fla. Stat. § 679.1021. Similarly subsections (i), (j), and (q), pertaining to "Mineral and Development Rights, Etc.", "Utility Deposits, Trademarks, Etc.", and "Accounts", respectively would have been characterized as either "General Intangibles" or "Payment Intangibles" if the parties intended to follow the classification scheme under the Uniform Commercial Code. *Id.*  It seems likely that just as the Mortgage organizes trademarks separately from mineral deposits, it also groups together all tangible equipment, fixtures and other goods into a single classification as "Personal Property" for convenience, and not in an effort to alter the perfection scheme dictated by the Uniform Commercial Code.

This Court is not aware of any authority holding that defined terms in a mortgage can establish the classification of collateral under the Uniform Commercial Code. Rather, the Uniform Commercial Code specifically categorizes certain types of goods based on their character, not based on the agreement of the parties to a security agreement. *See In re D&L Equip. Inc.*, 2011 WL 3946814 (E.D. Mich. 2011) (noting that the UCC defines collateral by type); *see also In re Am. Home Furnishings Corp.*, 48 B.R. 905 (Bankr. W.D. Wash. 1985) (section 9–105 of the UCC provides definitions of specific types of collateral)**.**  Nor can the Debtor point to any provision in the Mortgage that alters the character of the specific Goods for perfection purposes under the Uniform Commercial Code.  Indeed, section 5.10 of the Mortgage makes clear that captions and headings used in the Mortgage are for convenience only and are not meant to limit, amplify, or modify the terms and provisions of the Mortgage.

Accordingly, the fact that the Goods were included in the definition of Personal Property under the Mortgage does not demonstrate a clear intent to mandate the filing of a UCC-1 Financing Statement with the Florida Secured Transaction Registry to perfect a security interest in Goods, to the exclusion of other legally-effective means of perfection. The intention of the parties is a question of fact that cannot be resolved on summary judgment. *See Bank of New York v. Yugoimport SDPR J.P.*, 2011 WL 1641901 (S.D.N.Y. 2011) ("when the meaning of a contract is ambiguous and the intent of the parties becomes a matter of inquiry, a question of fact is presented which cannot be resolved on a motion for summary judgment").

Finally, whether or not personal property should be treated as a fixture under Florida law is determined by three criteria espoused by *Commercial Fin. Co. v. Brooksville Hotel Co.,* 123 So. 814, 816 (Fla.1929). Under the *Brooksville* test, courts should examine (1) whether the item has been annexed to the realty; (2) whether the item is appropriately applied to the use or purpose of that part of the realty to which it is connected; and (3) whether the party making the annexation intended the item to be a permanent accession. As the *Brooksville* test is in part focused on intent, the determination of whether the Goods are fixtures is a question of fact. *See Community Bank of Homestead v. Barnett Bank of the Keys*, 518 So.2d 928 (3d DCA 1988) (whether property annexed to realty is a "fixture" is a question of fact, or a mixed question of law and fact, to be determined by the evidence presented and the particular facts and circumstances of each case).

In order to be granted summary judgment, the Debtor was required to demonstrate that as to any particular Good, no genuine issue of material fact exists as to whether that

11

Good would be considered a fixture under the *Brooksville* test. The Debtor fails to meet its burden; some of the Goods at issue, which include elevators, escalators, heating and air conditioning systems, and fire, sprinkler and alarm systems, are Goods that often found to be fixtures. *See Allen v. McElrath*, 2009 WL 3255409 at *3 (Ohio Ct. App. Oct. 9, 2009) (central air conditioning systems are considered to be fixtures, not personal property); *Garrett v. Valley Sand and Gravel, Inc.*, 800 So.2d 600 (Ala. Civ. App. 2000) (central heating and air conditioning system is considered a fixture attached to the realty); *Silverman v. Mazer Lumber & Supply Co.*, 252 Ala. 657 (Ala. 1949) (heating and air conditioning systems are fixtures); *Pierce v. City of Lansing*, 694 N.W.2d 65 (Mich. App. 2005) (elevator located within four half-walls of and physically attached to the realty is clearly a fixture); *Fleck v. KDI Sylvan Pools, Inc.*, 981 F.2d 107 (3d Cir. 1992) (an elevator is meant for use solely as a fixture); *Otis Elevator Co. v. Palmetto Const. Co.*, 237 F. 749 (4th Cir. 1916) ("elevators are in their nature fixtures absolutely essential to the use of an office building and not removable without serious injury to it"); *Kolenic v. Travelers Lloyds of Texas Ins. Co.*, 2003 WL 247117 at *1 (Tex. App.—Austin Feb. 6, 2003) (a building's plumbing system is considered to be the built-in network of pipes, are thus fixtures); *Wichita Gas Co. v. Public Service Commission of Kansas,* 2 F.Supp. 792 (D. Kan. 1933) (pipe line system is a permanent fixture); *Youngbey v. District of Columbia*, 766 F.Supp.2d 197 (D.D.C. 2011) (doors and windows are generally considered to be real property or fixtures to real property, and are thus not personal property); *People v. Fox,* 591 N.W.2d 384 (Mich. App. 1998) (a window of a building is a fixture and thus is an item of real property, not personal property).

There exists genuine issues of material facts with regard to which of the Goods

have been annexed to the Property; whether the Goods are appropriately applied to the use or purpose of that part of the Property to which they are connected; and whether any of the Goods can be removed from the Property without causing significant damage. *See Goldstein v. Laurent*, 2011 WL 3586447 (S.D.N.Y. 2011) (it is the initial burden of a movant on a motion for summary judgment to come forward with evidence on each material element of his claim). Accordingly, summary judgment is not appropriate.

For the reasons set forth herein it is

ORDERED AND ADJUDGED that the Motion is DENIED as genuine issues of material fact exist as to whether NBV's liens and security interests are avoidable as to the Goods pursuant to section 544(a) of the Bankruptcy Code.

# # #

Submitted by:
Mindy A Mora, Esq.
Jeffrey I. Snyder, Esq.
Bilzin Sumberg Baena Price & Axelrod, LLP
1450 Brickell Avenue, Suite 2300
Miami, FL 33131

Copy furnished to:
Mindy A. Mora, Esq., who shall serve a copy of this order on all interested parties and file a certificate of service.